UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL LESH,<br><br>    Plaintiff,<br><br>v.<br><br>DS NATURALS, LLC,<br><br>    Defendant. | Case No. 22-cv-01036-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Pending before the Court is Defendant D's Naturals, LLC's motion to dismiss. Dkt. No. 17. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

**I.    BACKGROUND**

Plaintiff Carol Lesh filed this putative class action on February 18, 2022, alleging that Defendant's No Cow Protein Bars falsely advertise the amount of protein they contain. Dkt. No. 1 ("Compl."). Plaintiff contends that the product labels do not account for the quality—or digestibility—of the protein, as required under federal and state law. *See id.* at ¶¶ 6–8, 16–18, 22–28, 37. Plaintiff contends that Defendant's products are made with rice and pea protein, which are "low quality proteins" that are not fully digestible. *See id.* at ¶¶ 2–7. Of the 22 grams of protein advertised on the lemon meringue pie flavored bar, for example, Plaintiff states that it actually only contains approximately 13 grams of protein "in a form humans can use." *Id.* at ¶ 7.

Plaintiff's claims, which parallel those brought against protein-containing products in a ballooning number of cases in this district, turn on the regulatory structure created by the Food and Drug Administration ("FDA"). The Court has discussed this in depth, *see Brown v. Natures Path*

*Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *1–2 (N.D. Cal. Mar. 10, 2022), and only briefly summarizes it here.

### A. Regulatory Structure

The FDA extensively regulates what manufacturers may say about the protein in their products. The FDA requires all products to include "the number of grams of protein in a serving, expressed to the nearest gram" on the product's nutrition facts panel ("NFP"). *See* 21 C.F.R. § 101.9(c)(7). In doing so, manufacturers "may" use "the nitrogen method" to calculate the amount of protein by multiplying the product's nitrogen content by a factor of 6.25. *See id.*; *see also Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 808 (N.D. Cal. 2022) ("The more protein that a product has, the more nitrogen there will be. Thus, the amount of protein in a product can be estimated by multiplying its nitrogen content by some factor (6.25, as it turns out).").

However, if the manufacturer wants to include additional statements about a product's protein content outside the NFP (known as "nutrient content claims"), then the manufacturer must also amend the NFP to include a "statement of the corrected amount of protein per serving," expressed as a "Percent of Daily Value." 21 C.F.R. § 101.9(c)(7)(i). This figure takes the "actual amount of protein" from the NFP and adjusts it based on the product's "protein digestibility-corrected amino acid score" ("PDCAAS") to create a "corrected amount of protein per serving" that accounts for digestibility. *Id.* at § 101.9(c)(7)(ii)(i).

As this Court has previously explained, the FDA regulations do not explicitly specify how manufacturers must calculate the amount of protein in the protein content claim itself. *See Brown*, 2022 WL 717816, at *2. But this Court and others in the district have routinely concluded that under FDA regulations, the figures in such protein content claims may be calculated using the nitrogen method rather than PDCAAS. *See id.* at *6–7; *see also Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-CV-10053-YGR, 2022 WL 1766463, at *3–5 (N.D. Cal. May 20, 2022) (collecting cases).

### B. Plaintiff's Claims

Plaintiff contends that Defendant's labels are both unlawful and misleading because they violate California's Sherman Food Drug & Cosmetic Law, which incorporates the FDA's labeling

regulations.[1]  *See* Compl. at ¶ 64; *see also* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").  Specifically, Plaintiff appears to challenge three aspects of Defendant's labeling:

- *First*, Plaintiff brings a "front label claim," in which she alleges that the protein content claim on the front of the bars is inaccurate because Defendant uses plant-based proteins which are not fully digestible, and this figure is not calculated using PDCAAS.  *See* Compl. at ¶¶ 6–7, 27–28, 32–37, 96.
- *Second*, Plaintiff brings a "nutrition facts panel claim," in which she alleges that Defendant failed to include the corrected amount of protein per serving, expressed as a "Percent of Daily Value" figure, in the NFP.  *See* Compl. at ¶¶ 5–6, 17, 30–31, 37, 65, 96.
- *Lastly*, Plaintiff brings a hybrid claim in which she contends that the protein content claim on the front label is misleading *because* Defendant does not include the percent of daily value figure in the NFP.  *See* Compl. at ¶¶ 5–7, 30–31, 37, 65.

Based on these allegations, Plaintiff brings causes of action for violations of California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), as well as for fraud, deceit and/or misrepresentation and unjust enrichment.  *See id.* at ¶¶ 62–107.  Defendant seeks to dismiss the complaint in its entirety.  Dkt. No. 17.

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

---

[1] As the parties appear to recognize, private plaintiffs may not sue to enforce violations of the FDA regulations directly.  *See Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013).

1    *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule
2    12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible
3    on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
4    when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that
5    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6    Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a
7    claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity
8    the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317
9    F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how"
10   of the alleged conduct, so as to provide defendants with sufficient information to defend against
11   the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent,
12   knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
13   Rule 9(b).

14   In reviewing the plausibility of a complaint, courts "accept factual allegations in the
15   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
16   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
17   courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
18   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
19   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

20   **III.   DISCUSSION**
21       **A.   Standing**
22           **i.   Nutrition Facts Panel Claims**
23   As an initial matter, Defendant argues that Plaintiff lacks standing to bring her NFP claims
24   because she does not allege that she relied on any information in the NFP when purchasing the
25   products. *See* Dkt. No. 17 at 7–9. To plead standing under the UCL, FAL, or CLRA, a plaintiff
26   must also allege that they relied on the defendant's purported misrepresentations and suffered
27   economic injury as a result. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (Cal.
28   2011). Here, Plaintiff only asserts that she purchased a lemon meringue pie protein bar "after

reading and relying on the Product's *front label* that promised the protein[] bar provided '22g PLANT PROTEIN.'" Compl. at ¶ 49 (emphasis added). She does not allege that she reviewed the NFP, or that she relied on the purported absence of the percent of daily value figure when she made her purchases. Plaintiff appears to concede that she does not adequately allege reliance for purposes of her NFP claims. *See* Dkt. No. 22 at 15. The Court therefore **GRANTS** the motion on this basis. *Accord Brown*, 2022 WL 717816, at *4 (finding that plaintiffs had "a reliance problem" when they alleged only that they purchased the products based on the amount of protein per serving on the front label of the package).

### ii. Injunctive Relief

Defendant also contends that Plaintiff lacks standing to pursue injunctive relief. Dkt. No. 17 at 9–11.

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted). So once a plaintiff has been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quotation omitted). In the context of false advertising cases, the Ninth Circuit has confirmed "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). A plaintiff may establish the risk of future harm in two ways: (1) "the consumer's plausible allegations that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"; or (2) "the consumer's plausible allegations that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

Here, Plaintiff alleges that she was deceived by the labeling on the No Cow's bars because she believed that the products actually contained 22 grams of protein, as advertised on the front

1  labels. *See* Compl. at ¶¶ 49–50. She also alleges that she "continues to desire to purchase protein
2  products, including those marketed and sold by Defendant," and if they "were reformulated to
3  provide the grams of protein that are represented on the labels, Plaintiff would likely purchase
4  them again in the future." *Id.* at ¶ 52. She also explains that she "regularly visits stores where the
5  Products and other protein products are sold," but "cannot test whether or not the Products provide
6  the amount of protein that is represented on the label." *Id.* She concludes that consequently she
7  "will be unable to rely on Defendant's labels when shopping for protein products in the
8  future . . . ." *Id.*

9  Defendant argues that Plaintiff is demanding that it either comply with labeling
10 requirements not required by the FDA or reformulate its product to contain animal protein. *See*
11 Dkt. No. 17 at 10. But the Court finds that when Plaintiff's allegations are viewed in the light
12 most favorable to her—as they must be at this stage—Plaintiff simply seeks to buy the No Cow's
13 products as advertised. Plaintiff has alleged that she cannot rely on the product's labels when
14 shopping for protein bars, and thus cannot purchase the products although she would like to
15 purchase them in future if properly labeled. These allegations are sufficient to establish a risk of
16 future harm. *Accord Starratt v. Fermented Scis., Inc.*, No. 22-CV-03895-HSG, 2023 WL 359500,
17 at *2 (N.D. Cal. Jan. 23, 2023); *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2022 WL
18 344966, at *10–11 (N.D. Cal. Feb. 4, 2022).

### B. Preemption

Defendant next contends that Plaintiff's front label claims are expressly preempted by
FDA regulations. *See* Dkt. No. 17 at 4–5. As explained above, Plaintiff alleges that the front
labels on the No Cow's bars are unlawful and misleading for two reasons: (1) because the amount
of protein on the front is calculated using the nitrogen method and not PDCAAS ("front label
claims"); and (2) because Defendant does not include the percent of daily value figure in the NFP
("hybrid claims"). *See* Compl. at ¶¶ 6–7, 27–28, 32–37, 96; *see also* Dkt. No. 22 at 2–3, 7, 15–20.
Because the Food, Drug, and Cosmetic Act ("FDCA") preempts state causes of action that are
"not identical to" federal requirements, the central legal question is whether Plaintiff's claims
would force Defendant to abide by requirements that are not imposed by FDA regulations. 21

1  U.S.C. § 343-1(a)(5); *see Hawkins v. Kroger Co.*, 906 F.3d 763, 769–70 (9th Cir. 2018).

2  To the extent Plaintiff suggests that the protein content claim on the front label must be calculated using PDCAAS, the Court has already found that the FDA regulations permit use of the nitrogen method for such statements. *See Brown*, 2022 WL 717816, at *2. Plaintiff's front label claims therefore seek to impose labeling requirements that differ from FDA regulations, and are expressly preempted. *See id.* at *6. The Court adopts its prior reasoning in its entirety and **GRANTS** the motion to dismiss as to Plaintiff's front label claims with prejudice. *Accord Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-CV-10053-YGR, 2022 WL 1766463, at *3–5 (N.D. Cal. May 20, 2022).

Defendant does not appear to argue that Plaintiff's hybrid claims are preempted, *see* Dkt. No. 17 at 4–5, and the Court finds that they are not. Plaintiff contends that because Defendant did not comply with the NFP requirements for protein, its front label claims also violate the Sherman Law. *See* Dkt. No. 22 at 10, 21; *see also* Compl. at ¶¶ 5–7, 30–31, 37, 65. In addition to the NFP requirements already discussed, FDA regulations provide that a label may only contain an explicit statement about the "amount . . . of a nutrient" outside of the NFP if the statement "is not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). As Judge Chhabria recently found, "prominently advertising a product's protein quantity outside of the nutrition facts panel is misleading (within the meaning of the Food, Drug, and Cosmetic Act and the FDA's regulations), if the manufacturer doesn't include the quality-adjusted percent in the nutrition facts panel." *Rausch v. Flatout, Inc.*, No. 22-CV-04157-VC, 2023 WL 2401452, at *5 (N.D. Cal. Mar. 8, 2023). This is so because "the FDA's regulations are best understood as reflecting a determination that when a manufacturer emphasizes a product's protein content, that statement is misleading without including information about the product's protein quality on the nutrition facts panel." *Id.* Such claims do not impose additional or different requirements than those mandated by the FDA regulations, and the Court accordingly **DENIES** the motion as to Plaintiff's hybrid claims on this basis.[2]

---

[2] Although Defendant argues that Plaintiff's NFP claims are impliedly preempted under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341, 343 (2001), Dkt. No. 17 at 6–7, it does not appear to

### C. Reasonable Consumer Test

Lastly, Defendant argues that Plaintiff's claims are not supported by plausible allegations that a reasonable consumer is likely to be deceived. *See* Dkt. No. 17 at 12–14; Dkt. No. 23 at 6–8.

The parties agree that the UCL, CLRA, and FAL claims are all governed by the "reasonable consumer" test. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer test, [Plaintiff] must show that members of the public are likely to be deceived." *Id.* (quotations omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003). Rather, the test is whether "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact." *Williams*, 552 F.3d at 938. It is thus a "rare situation" when "granting a motion to dismiss [a UCL, CLRA, or FAL claim] is appropriate." *Id.* at 939.

Defendant urges that this is one of those rare cases where dismissal is warranted because the No Cow's bars contain the number of grams of protein indicated on the label and Plaintiff's allegations are otherwise too conclusory. Dkt. No. 17 at 13–14; Dkt. No. 23 at 6–8. The Court disagrees. Plaintiff alleges that the labels, which made protein content claims on the front without the percentage daily value figure in the NFP, led consumers to believe that the advertised protein is the amount of protein the bars "actually provide[], in a form humans can use," and masked that the products contained protein of "low quality" or "low biological value to humans." *See* Compl. at ¶¶ 2, 7, 17–18, 22–25, 27–28, 35–36, 43, 49. However inartfully pled, the Court finds that at this stage Plaintiff has plausibly alleged that Defendant's labels could deceive a reasonable

---

raise this argument as to the hybrid claims. In any event, the Court agrees with the reasoning in *Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *7 (N.D. Cal. May 10, 2022), that *Buckman* preemption does not apply in cases like this where the plaintiff "is suing because the protein statements at issue are allegedly misleading under California law, not because the protein statements allegedly violate FDA regulations."

consumer.³ *See Rausch*, 2023 WL 2401452, at *5–6; *Roffman v. Perfect Bar, LLC*, No. 22-CV-02479-JSC, 2022 WL 4021714, at *5 (N.D. Cal. Sept. 2, 2022); 58 Fed. Reg. at 2101 (noting that "information on protein quantity alone can be misleading on foods that are of low protein quality").

## IV.  CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. Plaintiff's claims based on the NFP are **DISMISSED** for lack of standing with leave to amend and Plaintiff's claims based on the front labels are **DISMISSED** as preempted under FDA regulations without leave to amend. However, the Court **DENIES** the motion as to Plaintiff's hybrid claims. Plaintiff may file an amended complaint within 21 days of this order.

Further, the Court **SETS** a telephonic case management conference on May 9, 2023, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

³ Having found Plaintiff's allegations are sufficient to establish deception under the reasonable consumer test, the Court similarly rejects Defendant's argument that "[t]here is no deceptive act by which Plaintiff could have been harmed . . . ." *See* Dkt. No. 23 at 9.